**In the Matter of M. J. B., alleged Delinquent Child.**

No. 12586.

Supreme Court of South Dakota.

Argued Sept. 18, 1979.

Decided Nov. 7, 1979.

Mark Becker of South Dakota Legal Services, Mission, for appellants M.J.B. and mother of M.J.B.

Mark Smith and LeAnn Larson Finke, Asst. Attys. Gen., Pierre, for respondent State of South Dakota; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

DUNN, Justice.

M.J.B. appeals from the orders of the circuit court that adjudicated him a delinquent child and placed him at Sky Ranch, South Dakota, for an indefinite period. We affirm.

On May 15, 1978, the respective owners of two business establishments—the Wig Wam and Strain's Seeds—in White River, South Dakota, notified the Mellette County Sheriff that break-ins had occurred at their establishments the previous evening. Property reported missing included over $150 in cash and various items of personal property, including a Texas Instruments calculator, screwdrivers, Copenhagen snoose, Bic lighters, socks, postage stamps and watches. Sheriff George H. Bouman drove to the establishments for an on-site investigation and found that both had been the subjects of breaking and entry.

As part of his investigation, Sheriff Bouman drove to the home of a woman in the Swift Bear community to talk with her son

R.T.E. There was no evidence at this stage of the investigation that would implicate R.T.E. in the burglaries. The woman informed the sheriff that R.T.E. was at the home of a friend, M.J.B. The sheriff and the woman then proceeded to where the two juveniles were located. The sheriff requested that the woman ask the boys and M.J.B.'s mother to come outside so he could question the juveniles regarding the burglaries. The two boys, accompanied by their mothers, came out to the police car. While in the police car, Sheriff Bouman, dressed in uniform but unarmed, questioned the boys in the presence of their mothers about the burglaries and specifically asked the location of the missing property. The boys cooperated with the sheriff in locating the property, including getting into the police car with their mothers and driving around town to pick up the stolen property and delivering it to the owners thereof. After retrieving the stolen property, Sheriff Bouman drove the boys and their mothers home. The period of questioning lasted approximately forty-five minutes. Later, the sheriff notified M.J.B.'s mother of certain watches that had been taken in the burglaries, and M.J.B., accompanied by his mother, brought one of the missing watches to the sheriff's office. The juveniles were never advised of their Miranda rights.

On May 17, 1978, a petition was filed in Circuit Court, Mellette County, Juvenile Division, seeking to adjudicate M.J.B. a delinquent child. The petition alleged that M.J.B. had committed the crime of third-degree burglary.

At the adjudicatory hearing held on June 20, 1978, evidence of M.J.B.'s statements and certain items of stolen property were admitted into evidence over his objection that he had not been given the Miranda warnings before the interrogation began. A motion for directed verdict was also denied. The trial court made a finding of delinquency. After a dispositional hearing on July 7, 1978, the court ordered M.J.B. placed in Sky Ranch for Boys.

The sole question to be decided in this case is whether M.J.B. was the subject of a "custodial interrogation" requiring the Miranda warnings.

■ Custodial interrogation within the rule limiting admissibility of statements stemming from such interrogation means questioning initiated by officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ In making a distinction between custodial and noncustodial interrogation regarding requirement of the Miranda warnings, the court follows certain criteria, including probable cause to arrest, subjective intent of police, subjective belief of defendant, and focus of the investigation. Although none of such factors is alone determinative, the most compelling is whether the focus of investigation has finally centered on the defendant. Brown v. Beto, 468 F.2d 1284 (5th Cir. 1972). Some of the factors to be considered are (1) nature of the interrogator; (2) nature of the suspect; (3) time and place of interrogation; (4) nature of interrogation; and (5) progress of the investigation. Annotation, 31 A.L.R.3d 565 (1970).

■ The due process clause of the Fourteenth Amendment requires that juvenile court delinquency hearings measure up to the essentials of due process and fair treatment. Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

■ Police officers are not required to administer Miranda warnings to be imposed simply because questioning takes place in the station house or because the questioned person is one whom the police suspect. Miranda warnings are required only when there has been such a restriction on a person's freedom as to render him in custody. Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

In Matter of V.R., 267 N.W.2d 832 (S.D. 1978), which is a very similar case, this court held that the circumstances surrounding the juvenile's discussion with police es-

tablished that the juvenile was not in custody or otherwise deprived of his freedom of action in any significant way, and therefore the state had no burden to show a knowing, intelligent and voluntary waiver of the juvenile's right to counsel or privilege against self-incrimination and that the statutes relating to situations in which a juvenile is in temporary custody were inapplicable. In that case, the juvenile had been questioned off and on for two and one-half hours in a police vehicle and at the police station with no parent present. During that time, he made some admissions and located stolen property for the police. *Miranda* warnings were only given before a written statement was taken from the juvenile.

■ At the time Sheriff Bouman questioned the boys, he had absolutely no evidence that they committed the burglaries. The investigation had just begun. He merely suspected that R.T.E. might be involved, and M.J.B. came into the picture as a result of trying to find R.T.E. Hence, he had no probable cause for arrest.

At all times during the questioning, the mothers of the juveniles were present and acquiesced in the discussion. While the sheriff acting alone initiated the discussion and his questions were somewhat blunt and accusatory in nature, there is no evidence in the record to indicate that this manner of questioning was based upon any evidence that the boys were involved in the burglaries. Nor did he tell the boys he had any knowledge which would incriminate them. He may have had his suspicions, but simply being a police suspect does not trigger a requirement of the *Miranda* warnings. *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). The juveniles volunteered any admissions and readily led the sheriff to the items involved in the burglaries within a few minutes after the questioning began. The sheriff sat in his car during the questioning, and the boys were standing outside the vehicle in a familiar home setting. The questioning was done at a reasonable time during the daylight hours. There was no evidence of any threats or coercion. The boys were not placed under arrest. There was never any coercive environment as complained of in *Miranda*, and the juveniles were not deprived of their freedom in any significant way.

The orders of the trial court are affirmed.

All the Justices concur.