498 N.W.2d 646 (1993)
In the Matter of R.S.B., Alleged Delinquent Child.
No. 17885.
Supreme Court of South Dakota.
Considered on Briefs January 14, 1993.
Decided April 7, 1993.
Drake A. Titze, Sioux Falls, for appellant.
Mark Barnett, Atty. Gen., Wade A. Hubbard, Asst. Atty. Gen., Pierre, for appellee.
HENDERSON, Justice.
R.S.B., a juvenile, appeals an order finding him guilty of third degree burglary, declaring him delinquent, and entering an *647 order of commitment to the State Training School. We reverse and remand.

FACTS
By Petition to declare R.S.B. a delinquent child under SDCL ch. 26-8, R.S.B. was charged with two criminal acts arising out of a single incident. He was sixteen years old. He appeared before Judge Richard Hurd on a petty theft charge but did not bring an attorney to represent him. It appears that Judge Hurd suggested that R.S.B. should obtain legal representation for his defense against the burglary charge. There is no transcript of that hearing, so this Court cannot, with exactitude, determine what Judge Hurd told R.S.B. However, it is clear that (1) R.S.B. was found guilty of petty theft, (2) R.S.B. was sentenced to 10 days in jail, (3) R.S.B. was found to be delinquent, and (4) trial court, by order, reflected R.S.B. was not represented by counsel.
Two weeks later, R.S.B. appeared before Judge Gene Paul Kean on a charge of third degree burglary. Again, he appeared without an attorney. When asked by Judge Kean: "And that's the way you want to proceed this morning? [without a lawyer]," R.S.B. replied "No." Thereafter, his father explained that he and his son had been unable to hire an attorney and requested more time to do so. Father expressed that he had talked to three lawyers and the Public Defender's office. All three lawyers were busy, had conflicts, and could not come to the hearing. The Public Defender's office was also contacted. Father told the trial court, "hopefully we will be able to get somebody from over there [Public Defender's office]." Essentially, the trial court decided R.S.B. had waived his right to counsel by appearing without an attorney. The trial court proceeded with a full evidentiary hearing. R.S.B., with the assistance of his father, attempted to conduct a defense by questioning state's witnesses. Acting as the finder of fact, the trial court sustained the petition, found R.S.B. guilty of third degree burglary, and entered an order committing him to the State Training School. R.S.B. was declared to be a delinquent child.

DECISION
A juvenile has the same right to counsel as an adult. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); Matter of M.J.B., 284 N.W.2d 874 (S.D. 1979). In an adult case involving an alleged waiver of the right to counsel, we explained:
A defendant must be aware of the dangers and disadvantages of self-representation. On appeal, waiver of the right to counsel will not be found knowingly and intelligently made unless the trial court (1) warns the defendant of the dangers of self-representation or, (2) unless the record indicates circumstances from which this court can find the defendant was aware of the danger and made a knowing and intelligent waiver.
State v. Van Sickle, 411 N.W.2d 665, 667 (S.D.1987).
There is no indication in the record that R.S.B. was aware of the dangers and disadvantages of self-representation and that he "knowingly and intelligently" waived his right to counsel.
SDCL 26-7A-54 provides, inter alia, "the court shall conduct an advisory hearing before the adjudicatory hearing" and "[t]he court shall first ... [a]dvise the parties of their rights to be represented by attorneys and requirements for court-appointed attorney..." There is no record that this required statutory advisement occurred.
We have previously stated that we will "indulge every reasonable presumption against waiver" and that each case should depend on the "particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." State v. Arpan, 277 N.W.2d 597, 599-600 (S.D.1979) (citing Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937)).
Based on R.S.B.'s status as a juvenile, his relative inexperience with the legal system, and the incomplete record, we cannot uphold the trial court's conclusion that R.S.B. made a knowing and intelligent waiver of his right to counsel. See Van *648 Sickle, 411 N.W.2d at 667 (no waiver where it was not shown the defendant knew the pitfalls of self representation). See also In re Haas, 5 N.C.App. 461, 168 S.E.2d 457 (1969) (parent waived right to counselbut no showing that waiver was knowing and intelligent).
The adjudicatory phase of these proceedings and the dispositional order of delinquency are reversed; and the order of commitment to the State Training School is also reversed. Having reversed, we remand for proceedings consistent herewith.
WUEST and SABERS, JJ., concur.
MILLER, C.J., and AMUNDSON, J., concur specially.
MILLER, Chief Justice (concurring specially).
Although I agree with the majority opinion, there is an issue which, in my view, should not be ignored. I feel compelled to write specially to point out and emphasize what I perceive to be a serious juvenile justice concern in this state.
As the majority opinion notes, Judge Hurd sentenced this 16-year-old boy to a ten-day jail term in the Minnehaha County jail on a petty theft charge. The dispositional order reflects that R.S.B. had committed second-degree petty theft (SDCL 22-30A-17), which is theft of property less than $100. That charge is a Class 2 misdemeanor carrying a maximum penalty for adults of thirty days in the county jail or a $200 fine, or both. SDCL 22-6-2. The dispositional order authorized "work and school release" and provided that the time would be served in three separate time frames (two of which appear to be weekends).
My concern is that despite the existence of a very modern juvenile detention facility in Minnehaha County, the judge chose instead to sentence this young man to the county jail. Even assuming (and I believe it a fair assumption) that the county jail has created its own juvenile area which is sight and sound separated from adult prisoners, it was and is an inappropriate placement of R.S.B.
At the time of this juvenile proceeding, SDCL 26-8-29 provided that a child fifteen, sixteen or seventeen "may be held in detention in a jail or lockup if the child is sight and sound separated from any adult prisoners, and if the child is alleged to have committed an offense defined as a crime of violence under SDCL 22-1-2(9), sexual contact under SDCL 22-22-7, or as a disposition, when the child has been adjudicated a delinquent for a crime which, if committed by an adult, would be a felony." (My emphasis.) (NOTE with the passage of the revised juvenile code in the 1992 Legislature, SDCL 26-8-29 was repealed and replaced by SDCL 26-7A-26, which contains the same age limitations of the prior statute as it pertained to pre-adjudication detention in jails, BUT it eliminates any reference to jailing as a dispositional alternative.)
Because R.S.B. was not charged or convicted of a crime of violence, sexual contact or an offense that would have been a felony were he an adult, he should not have been placed in the county jail for pre-adjudication detention OR as part of a disposition.
Under the revised juvenile code, which was adopted in 1992 and went into effect about six months after this dispositional order, many new safeguards have been added to protect children. In addition to strengthening the anti-jailing statute (as noted above), it specifies the dispositional alternatives available to judges in delinquency cases. SDCL 26-8C-7 sets forth ten alternative dispositions, none of which includes incarceration in a county jail. Rather, it is anticipated that for less serious cases, and surely second-degree petty theft would be so considered, if a child is to be placed in a secure facility it must be in a detention facility as defined by SDCL 26-7A-1(15).
In addressing the special problems presented by juvenile cases, judges must be particularly careful in fashioning appropriate dispositional placements. Even though, in the eyes of the trial judge, his disposition may seem to be what is best at the moment, he must be cautious about fashioning *649 a placement which does not fully take into account the alternatives specifically envisioned by statute.
AMUNDSON, Justice (concurring specially).
There is no question that this juvenile stated on the record his desire to be represented by an attorney, and he has a right to same.
The record is also clear that juvenile and his father were aware of this right to counsel well in advance of the date set for hearing, since father had contacted three lawyers who apparently did not undertake representation. This record does not reflect one contact by the father or juvenile with the court advising the court of the difficulty being encountered in employing legal representation. The trial court was not advised of this fact until the classic "midnight hour" or at the start of the long scheduled hearing.
Under these circumstances, it is easily understood why the trial court was less than enthused with the request of juvenile and his father for a continuance at this late hour. This is probably the only type of case where a party would get a continuance based on such conduct, since the granting of a continuance is totally at the discretion of the trial court.
I agree with the majority's position that the minor is entitled to legal representation, but do not agree or condone the manner in which the father handled the issue of an attorney being obtained or appointed. Parents should not be allowed to procrastinate on this aspect of the proceeding up to the time set for the hearing. This type of conduct can easily be described as an attempt to avoid the inevitable.